# Montgomery & Eufaula Railway Company *v.* Kolb & Hardaway.

*Action against Common Carrier for Damages for Loss of Freight.*

1. *Custom or usage of trade; when admissible in aid of interpretation of contract.*—"The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character;" and, on this principle, "the usage or habit of trade or conduct of an individual, which is known to the person who deals with him, may be given in evidence to prove what was the contract between them."

2. *Railroad company; custom or usage as to delivery of freight.*—The rules observed by shippers in their general transactions with the depot agent of a railroad company touching the delivery of freight for shipment, if continuous or general, though not universal, may grow into a usage, authorizing others to treat it as the proper rule, and as an element of the contract of shipment, although the usage may be in conflict with regulations established and promulgated by the company's superintendent, known to the shippers, and no notice of it is traced to the superintendent.

3. *Same; must keep itself informed as to habits or usages of its depot agents.*—It is the duty of a railroad corporation to keep itself informed as to the manner in which its depot agents conduct their agency, and as to their habit or usage in the matter of receiving and delivering freight; and it can not escape responsibility for the consequences of a usage which its own trusted agents had permitted to grow up, and to be acted upon, on the ground that such usage is contrary to its established regulations, and was not known to its superintendent, or managing agent.

4. *Common carrier; delivery of goods for carriage; when affected by usage.*—"Proof of a constant and habitual practice and usage of a common carrier to receive goods" for transportation "when they are deposited for him in a particular place, without special notice of such deposit, is sufficient to show a public offer by the carrier to receive in that mode, and to constitute an agreement between the parties, by which the goods, when so deposited, shall be considered as delivered to him, without any further notice."

5. *Same.*—A deposit of cotton in a street along the side of the platform of a railroad depot, or in the railroad cotton-yard, for shipment, in pursuance of a custom or usage adopted or sanctioned by the depot agent, may amount to a delivery to the railroad company, although no receipt is given by the agent to the shipper, and such usage or custom is contrary to the established regulations of the company, known to the shipper, and no notice thereof is traced to the superintendent or managing agent of the company.

6. *Rulings of primary court; presumptions in favor of.*—When the bill of exceptions does not purport to set out all the evidence, this court will, on appeal, presume that there was testimony to justify all the rulings of the primary court, if, under any state of proof, they would be free from error.

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

7. *Charges unsupported by the evidence should be refused.*—Charges should always be framed in reference to the testimony; and if a charge asked raises an inquiry on a matter of fact, of which there is no testimony, it should be refused.

8. *Delivery of goods to common carrier; when liability not affected by failure to give receipt.*—While the statute (Code, § 2139) makes it the duty of common carriers to give receipts for merchandise delivered to them for transportation, their failure to do so can not vary their liability, if delivery is satisfactorily shown.

9. *When charge as to identification of property free from error.*—In an action against a railroad company for the loss of nine bales of cotton, alleged to have been delivered to defendant, with other cotton, for shipment, for which no receipt was given, a charge instructing the jury that it was not necessary to identify the cotton by marks or brands, or by a certain number of pounds, but that they must be satisfied "in regard to the nine particular bales of cotton," either by an average, or by some other means, so that they could say that the nine bales of cotton sued for were owned by the plaintiffs, is free from error, there being evidence tending to show the average weight, class and value of the cotton.

APPEAL from Barbour Circuit Court.

Tried before Hon. H. D. CLAYTON.

This was a suit by Kolb & Hardaway against the Montgomery & Eufaula Railway Company, a body corporate, to recover the value of nine bales of cotton, alleged to have been delivered to the defendant at Eufaula for transportation to Montgomery, and which were never delivered by the defendant at the latter place; was commenced on 12th March, 1881, and was tried on the plea of the general issue, the trial resulting in a verdict and judgment for the plaintiff, from which the defendant appealed.

As recited in the bill of exceptions, " the proof showed that the defendant was a common carrier of goods; that plaintiffs were cotton buyers and shippers in Eufaula, Alabama, dealing largely with defendant as such common carrier, and, during the fall and winter of 1880–1, shipped a large number of bales of cotton over defendant's road; that at the beginning of that season, in August, 1880, the superintendent of the defendant company issued instructions to defendant's station agent at Eufaula as to the manner of receiving cotton for shipment, and gave notice to cotton shippers in Eufaula of such instructions, such instructions and notice being contained in a printed circular, a copy of which was given to plaintiffs." This circular was read in evidence by the defendant, and its contents, so far as pertinent to the facts of this case, may be summarized as follows: (1) No cotton will be received upon the yard of the company, unless ready for shipment. Each dray load of cotton must be accompanied by a dray receipt in duplicate, giving the names of the consignor and consignee, the marks, number of bales, and place of destination. (2) When cotton is shipped in lots, an application, giving marks, name of consignee, and other needed shipping directions, should precede or accompany

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

the first dray load of the lot, in which case the dray receipt will only be required to give the name of the consignee, marks, and number of bales. Agents will sign and return to shipper a receipt for each dray load, retaining the duplicate. When the lot is completed, the shipper must produce the dray receipts for the entire lot, upon which alone will the regular cotton receipt be issued. (3) Should any cotton be placed upon the yard of the company without proper receipt being taken by the shipper, it will be at his risk entirely, as the company will assume no risk whatever upon goods not placed properly in its possession. (4) When cotton is hauled to the depot, it is understood to be ready for shipment, and hence, it will be loaded in the cars as it arrives, when necessary. (5) The depot will be open for the receipt of cotton during such hours of the day as will meet fully the business requirements of the station ; and at terminal points, during periods of heavy shipments, a cotton clerk will be constantly in cotton-yard during such hours, to sign dray receipts, direct draymen where to discharge, and to avoid their unnecessary detention. (6) No receipt will be issued until the cotton is on the platform, and the company furnished with shipping directions; and the company will not be responsible for the cotton until the receipt is given; and agents will not permit shippers to hold cotton on the yard indefinitely for the purpose of making up lots, or for any other purpose, when such accommodation is detrimental to the shippers, or interferes with the facilities for attending to the business of the station.

"The evidence tended to show that a very small portion of the cotton of the plaintiffs was received from the plaintiffs by the defendant in compliance with these instructions during that season." As further recited in the bill of exceptions, "the proof as to the loss of the nine bales of cotton sued for was made by showing the number of bales of cotton sent to the depot and cotton yard of defendant, and showing that the defendant had receipted for nine bales of cotton less than this number." The other facts in evidence, necessary to an understanding of the points decided, so far as set out in the bill of exceptions, are sufficiently stated in the opinion.

The court, *ex mero motu*, charged the jury, among other things, that "it is not necessary that they should identify the cotton by marks or brands, or by a certain number of pounds, but that the evidence must satisfy you in regard to the nine bales of cotton, either by an average, or by some other means, so that you can say that nine bales of cotton were owned by the plaintiffs, the nine bales for which they brought suit." The court also gave the following charge at the request of the plaintiffs : "If the jury are reasonably satisfied from the evidence, that

there was, during the months of November and December, 1880, a constant and habitual practice and usage of the defendant to receive cotton when it was deposited for it on its enclosed ground without special notice of such deposit, that is sufficient to show a public offer by it to receive goods in that mode, and to constitute an agreement between the plaintiffs and defendant, by which the cotton, when so deposited, shall be considered as delivered to it without any further notice."

The court refused to give to the jury the following charges requested by the defendant: (1) "It is usual and regular for carriers to issue receipts for goods received by them for transportation; and, if in this case the plaintiffs fail to produce such receipts, it is incumbent on them to account for their loss, or failing therein, such failure must be taken as *prima facie* evidence that the goods they claim to have delivered to defendant, were never delivered." (2) "If the jury believe from the evidence that the defendant has established rules and regulations for the receipt of goods by it for transportation as a common carrier at its depot in Eufaula, and such rules were reasonable; and that plaintiffs knew what such rules were, then they could not make a delivery to defendant of goods for transportation as a common carrier, except in accordance therewith; and, unless the rules provided for a constructive delivery, then no constructive delivery could have been made by the plaintiffs." (3) "If the jury believe from the evidence that defendant had established reasonable rules and regulations for the receipt of goods by it at its depot in Eufaula, for transportation as a common carrier, and they were known to plaintiffs, the defendant can not be held liable to plaintiffs, as a common carrier, for goods attempted to be delivered to it in violation of such rules, which were lost before the defendant assumed actual and exclusive dominion over them." (4) "If the jury believe from the evidence that the defendant had established reasonable rules and regulations for the receipt of goods by it at its depot in Eufaula for transportation as a common carrier, and they were known to the plaintiffs, the plaintiffs can not hold the defendant liable as a common carrier for goods attempted to be delivered to it on an agreement made with the station agent of defendant in Eufaula, in violation of such rules, unless the plaintiffs show that the goods were lost by the defendant after it had assumed actual and exclusive dominion over them." (5) " The station agent of defendant in Eufaula had no power, in violation of the reasonable established rules and regulations of the defendant for the receipt of goods by it for transportation as a common carrier, without express authority from defendant, to enlarge the liability of defendant, in respect to such receipt of goods, beyond that allowed by such rules; and if the

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

plaintiffs knew that·such agent was exceeding his authority in agreeing to receive goods from them contrary to such rules, then the defendant is not liable to plaintiffs for a loss of goods occurring as a consequence of such violation."

The defendant reserved exceptions to the charges given, and to the refusal of the court to charge as requested by it; and these rulings are here assigned as error.

JOHN D. ROQUEMORE, for appellant.    (1) It is a fundamental principle of the law of agency, that an agent can not bind his principal in matters beyond his authority, when the person with whom he deals, has notice that he is exceeding his authority; and this principle is fully applicable to a corporation. In this case the depot agent openly disregarded the instructions given to him by his superior·officer, and this was well known to the appellees; and it was the wrongful conduct of the appellees that caused the agent to disregard his instructions. The appellees are, therefore, not entitled to recover.—Hutch. on Carriers, §§ 266–9; Redf. on Carriers, §§ 201–3; *Bryant v. Moore*, 26 Maine, 84; *The Floyd Acceptances*, 7 Wall. 666; *Silliman v. F. O. & C. R. Co.*, 27 Gratt. 119; *Clark v. Des Moines*, 19 Iowa, 199; *Whiteside v. U. S.*, 3 Otto, 247; *Goddard v. Mallory*, 52 Barb. 87; *Goodrich v. Thompson*, 44 N. Y. 324; *Irwin v. Railroad*, 59 N. Y. 653; *Lewis v. Com'ers*, 12 Kan. 186; 1 Brick. Dig. p. 61.    (2) Railroad companies, as common carriers, have the right to establish reasonable rules and regulations for the conduct of their business.—*Evans v. Railroad Co.*, 56 Ala. 246; Hutch. on Carriers, §§ 265–6.    (3) They are under no obligation to build warehouses for the accommodation of the public.—*A. & T. R. R. Co. v. Kidd*, 35 Ala. 209.    (4) Delivery of freight to common carriers may be made in two ways—by placing the goods in the actual possession of· the carrier, or by placing them in the constructive possession of the carrier.—Hutch. on Carriers, §§ 82 *et seq.; O'Bannon v. Southern Ex. Co.*, 51 Ala. 481.    (5) It is claimed that the delivery in this. case was made in accordance with a usage or custom, which, prevailing at Eufaula, allowed shippers of cotton to place their cotton in appellant's cotton-yard, from which it would be taken without further notice.    But no such usage or custom is shown.    To establish a usage, the evidence must show that it is not in violation of law, not inconsistent with public policy; that it is well established, generally known, certain, uniform and reasonable.— *West v. Bull*, 12 Ala. 340; *Boon v. Belfast*, 40 Ala. 184; Hutch. on Carriers, § 44; *Railroad Co. v. Lockwood*, 17 Wall. 357; *Price v. White*, 9 Ala. 563; *Barlow v. Lambert*, 28 Ala. 704; *Bank of K'y v. Adams Ex. Co.*, 3 Otto, p. 181; *Desha v. Holland*, 12 Ala. ·

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

513 ; *Adams v. Otterback*, 15 How. 544 ; *Steele v. McTyer's Adm'r*, 31 Ala. 667 ; *Railroad Co. v. Kidd*, 35 Ala. 209 ; 2 Redf. on Railways, p. 146 ; *Stone v. Rice*, 58 Ala. 95 ; *McClure v. Cox*, 32 Ala. 617 ; 1 Greenl. on Ev., § 260 *a* ; 1 Chitty on Cont., p. 142 ; *Partridge v. Forsyth*, 29 Ala. 200 ; 2 Greenl. on Ev., §§ 248–52 ; Code of 1876, § 2139.

G. L. COMER, *contra*. The testimony shows that appellees delivered the cotton to the company in the same way and manner they had been accustomed to receive it for years ; and its failure to account for the cotton renders it liable for the cotton, either as a common carrier, or as a warehouseman. Redf. on Carriers, §§ 95, 96, 99–102 ; *Southwestern R. R. Co. v. Webb*, 48 Ala. 585 ; *Mobile & Girard R. R. Co. v. Prewitt*, 46 Ala. 63.

STONE, J.—When the law has declared certain express rules for the government of men, or when persons enter into express stipulations, expressing the terms on which they enter into contracts, it is a reasonable rule, subject only to a few exceptions, that neither custom nor usage will be allowed to dispense with such legal requirements, nor such express stipulations.—*Barlow v. Lambert*, 28 Ala. 704. "Where by local custom or usage provincialisms and technicalities of science and commerce, and perhaps some others, have acquired a known, fixed and definite meaning, different from their ordinary import ; or where such technicalities, unexplained, are susceptible of two or more plain and reasonable constructions, it is certainly competent to prove the existence of such custom, as a means of showing the sense in which the contracting parties intended to be understood."—*Ib.* See also the many authorities referred to on the briefs of counsel. Speaking of usage of trade, Mr. Greenleaf, Ev., vol. 2, § 251, says : "It is sufficient if it be established, known, certain, uniform, reasonable, and not contrary to law. . . Their true office is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulation, but from mere implications and presumptions, and acts of a doubtful and equivocal character ; and to fix and explain the meaning of words and expressions of doubtful or various senses. On this principle, the usage or habit of trade or conduct of an individual, which is known to the person who deals with him, may be given in evidence to prove what was the contract between them." This latter principle may be illustrated by a familiar incident in every-day life. A customer is in the habit of dealing with his merchant, and having his purchases sent home, and his bills run from one to two months,

26

before payment is demanded or expected; and this, too, at cash rates. He selects a given article of merchandise, and orders a given number of yards to be measured off. In this there is not a word said about price, about delivery, or about the time of payment. Yet, there is implied in these few simple and indeterminate words and acts, that the goods are sold at their customary cash market value, that they will be delivered at the purchaser's residence without undue delay, and that payment will not be expected, until the end of the customary indulgence. So, in *Boon v. Steamboat Belfast*, 40 Ala. 184, quoting from Judge Story, this court said : " The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character."

In September, 1877, Raoul, superintendent of the South Western Railroad Co. of Georgia—which company was also operating the appellant railroad company—issued a circular, headed "Notice to cotton shippers and instructions to agents." This notice or circular was again issued at the opening of the season of 1880–1881, and was forwarded to, and received by the agent at Eufaula, and a copy was furnished to the appellees, Kolb & Hardaway. Kolb & Hardaway were cotton buyers at Eufaula, did a considerable business, and made many shipments of cotton by the appellant railroad company. This suit was brought to recover the value of nine bales of cotton, alleged to have been delivered to the railroad company at Eufaula, to be transported to, and delivered at Montgomery, and never delivered. The case turned on the question of delivery to the railroad company at Eufaula; for it is not pretended the railroad company forwarded the cotton, or delivered it at Montgomery. In fact, neither the railroad company nor its agent at Eufaula gave any receipt for the cotton alleged to have been lost. There was no express contract fixing the terms.

We have carefully examined the circular, made a part of the bill of exceptions, and we think its regulations and directions are reasonable. They are alike beneficial to the shipper and carrier. They commend themselves by their wise and systematic provisions, intended to secure prompt shipment, to prevent confusion of goods, and to render disputes about delivery for shipment almost impossible.

It is not pretended that those regulations were conformed to in this case. The claim is, that the railroad company departed from its own regulations, and thus established a usage different from them, which was conformed to in this case. The bill of exceptions recites that, " the evidence further tended to show that

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

shortly after the printed 'notice to cotton shippers and instructions to agents' were issued, they were disregarded by both shippers and defendant's agent at Eufaula, and that it became a general custom and usage to deliver and receive cotton at the depot in Eufaula, in disregard of such printed notice and instructions. The evidence on this subject was very conflicting, the agent himself testifying that he never received cotton for shipment in non-compliance with said instructions, except in a few instances made necessary by what he thought an exigency, and as a matter of accommodation to the shipper." In another place the bill of exceptions states : " The proof further showed that some of the cotton brought to the cotton-yard of defendant by the plaintiffs for delivery to the defendant for shipment, was not placed by plaintiffs on a certain plank platform of defendant, upon which defendant required all cotton bales to be placed before it would receive and receipt for them, but was placed in a street running along the side of such platform ; but testimony was introduced by said plaintiffs, going to show that the station agent did take cotton bales from this street and receipt for them." In another place, in setting out testimony, it is said, " that plaintiffs frequently and persistently violated these rules and regulations of the defendant company as contained in such 'notice to cotton shippers and instructions to agents,' against the protest of the station agent at Eufaula." It is nowhere shown that the station agent ever did refuse to receive and ship cotton that was delivered for shipment, because not delivered in conformity with the printed rules and regulations.

It is contended for appellant that inasmuch as the station agent had positive instructions from the superintendent not to receive or receipt for cotton to be shipped. unless delivered in accordance with the printed directions, and inasmuch as the shippers in this case had notice of these regulations, by receiving a copy thereof, then, not having received the agent's receipt for the cotton, they have shown no legal delivery to the railroad, and can not recover. Such is undoubtedly the law, if the testimony stopped here. Against this, it is replied for appellees, that the railroad company, through its agent at Eufaula, has permitted a usage to grow up, which dispenses with the regulations prescribed in the circular, and constitutes the act done in this case a legal delivery to the railway company. To this it is rejoined, that no knowledge of such violation of the regulations is traced to Raoul, the superintendent, and hence the railroad company is not bound by such usage, if proven to have been established.

We think this is too narrow a view of the question. Railroads usually have extended lines, and along those lines are many depots, or stations. at which the business of receiving and

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

delivering freight is carried on. The trading public, as a rule, have no access to the superintendent, and can only know the station agents, with whom they have dealings. They can have no control of the business regulations of the railroad, and have no power of appointment or removal. Whatever regulation, custom or usage such station agent adopts, or permits to be adopted, the public must either conform to, or will feel itself justified in conforming to. The rules observed by shippers in their general transactions, if continuous or frequent, although not universal, grow into a usage, which would authorize others to treat it as the proper rule, and as an element of the contract of affreightment. This constitutes the very spirit, the intent of a usage of trade. It supplies, by implication, an unexpressed fact, or link in the chain of facts, which go to make up and prove the contract. And we think it no answer to this, that no testimony was offered of this violation of instructions on the part of the agent, tending to trace notice of it to the superintendent. It was the duty of the corporation to keep itself informed of the manner in which its station agents conducted their agency, their habit, or usage in the matter of receiving and delivering freight; and we think it would be highly detrimental to the public service, if we were to permit a railroad corporation to escape responsibility for the consequences of a usage, which its own trusted agents had permitted to grow up, and be acted upon.—*Piedmont & Arlington Ins. Co. v. Young*, 58 Ala. 476. There was sufficient testimony to justify the court below in submitting to the jury the inquiry whether or not there was a usage at the Eufaula depot of the defendant railroad company to dispense with the regulations prescribed in the superintendent's circular. It will be remembered there was testimony tending to show there had been a frequent, if not general, disregard of those regulations, commencing soon after they were issued, a period of more than three years, before the loss complained of in this case. That is certainly a sufficient time to establish a usage of trade. True, the testimony was in conflict as to the frequency and extent of the violation. The question, which phase of the evidence was the true one, was for the jury.

As we have said, the question in this case is, was there, or was there not a delivery of the cotton to the railroad. In Hutchinson on Carriers, § 90, is this language: "While it is the undoubted general rule that the delivery, to bind the carrier, must be made either to him, or to some one with authority from him, or who may be rightly presumed to have such authority, it is not to be understood that it is not subject to such conventional arrangements between the parties as they may choose to make in regard to the mode of delivery, or that it may not be varied

[Montgomery & Eufaula R'y Co. v. Kolb & Hardaway.]

by usage, or by a particular course of dealing between them. . . . If, therefore, the parties agree that the goods may be deposited for transportation at any particular place, and without any express notice to the carrier, such deposit will be a sufficient delivery; and proof of a constant and habitual practice and usage of the carrier to receive the goods when they are deposited for him in a particular place, without special notice of such deposit, is sufficient to show a public offer by the carrier to receive goods in that mode, and to constitute an agreement between the parties, by which the goods, when so deposited, shall be considered as delivered to him, without any further notice. Such a practice and usage are tantamount to an open declaration, a public advertisement by the carrier, that such a delivery should, of itself, be deemed an acceptance by him; and to permit him to set up, against those who had been thereby induced to omit it, the want of the formality of an express notice which had been thus waived, would be sanctioning injustice and fraud." Now, it seems to us this is a clear statement of the principle, and the ground on which it rests. See also *Ib.* § 91.

The bill of exceptions does not purport to set out all the evidence, and we must presume there was testimony to justify all the rulings of the court, if, under any state of proof, they would be free from error.—*Alexander v. Alexander*, 71 Ala. 295, and authorities cited. Under the statement of testimony found in this record, we are not informed whether its tendency was to prove a usage for the station agent to receive and receipt for cotton delivered in violation of the regulations, before it was placed on the platform for shipment, or whether the usage simply had the extent, that when cotton was delivered in disregard of the instructions, he would himself have the cotton placed on the platform, and otherwise prepared for shipment, and then give the railroad's receipt for it. The statement of testimony bearing on this question is as follows: "Testimony was introduced by plaintiffs going to show that the station agent did take cotton bales from the street, and receipt for them;" and the further fact that plaintiffs had no receipt for the nine bales of cotton, the subject of this suit. No question appears to have been raised in the court below on this shading of the question, and we can not consider it. We must presume, in the absence of averment to the contrary, that the testimony was such as to justify the circuit court in submitting the question of usage, as applied to this case, to the determination of the jury. The question, then, is, did the court correctly declare the law, upon any possible state of testimony bearing on the question.—1 Brick. Dig. 336, § 12. The testimony, as recited, leaves this question in some obscurity.

Under the rules declared above, the circuit court did not err

[Phillips v. Towles.]

in refusing to give charges 2, 3, 4, 5, asked by the defendant. Each of them ignored the question of usage, and made the defendant's liability to depend alone on compliance by the plaintiffs with the regulations prescribed in the circular. The charge given by the court at the instance of the plaintiffs is in harmony with our views, and is free from error. Neither did the circuit court err in instructing the jury as to the method of ascertaining the value of the cotton. We must suppose, in favor of the ruling, that there was testimony tending to show the average weight, class, and value of the cotton delivered, or claimed to have been delivered, possibly as part of a larger lot.

The first charge requested by the defendant raises a somewhat different question. It asserts that a failure by plaintiffs to produce the railroad's receipt for the cotton, made it incumbent on them to account for the loss of the receipt, or [and] failing therein, such failure must be taken as *prima facie* evidence that the goods they claim to have delivered to defendant, never were delivered. It is not claimed in this case that any receipt ever was given for the nine bales alleged to have been lost. It is stated as fact that none ever was given. There was, therefore, no testimony which raised inquiry as to a loss of the receipt. None had been given. Charges should be framed in reference to the testimony; and if a charge asked raises inquiry on a matter of fact of which there is no testimony, it should always be refused. Its only tendency is to multiply inquiries, and confuse the jury. That charge was rightly refused for this reason.—1 Brickell's Digest 338, § 41; *Ib.* 339, § 61; *Ib.* 340; §§ 64, 65.

Section 2139 of the Code of 1876 makes it the duty of common carriers to give receipts for merchandise delivered to them for transportation. Their failure to do so may render proof of delivery more difficult. It can not vary their liability, if delivery is satisfactorily shown.

Affirmed.