# BALTIMORE CITY COURT

Filed March 22, 1893.

LAZARD FRERES

VS.

MERCHANTS AND MINERS TRANS-
PORTATION COMPANY.

*Schmucker & Whitelock* for plaintiff.

*Wm. Pinkney Whyte* and *Bernard Carter* for defendant.

WRIGHT, J.—

### ORAL OPINION OF THE COURT ON PRAYERS.

The questions presented by the prayers submitted can be divided into two classes: First, those submitted on the view that the Maryland statute in relation to bills of lading applies to the bills sued on in this case; and second, those submitted on the theory that even if said statute does not apply, and that although we must look at the validity or invalidity of said bills as if there were no statute, still there has been such conduct on the part of the defendant, or its agent, or both, that the liability on the bills exists and would have existed at common law independent of any statutory provision.

As to the prayers of the first class: They must be rejected; my predecessor in this Court, Chief Judge Harlan, has, on the demurrer, by a clear, and to me, convincing opinion, decided that the bills of lading here in dispute are not within the statute; and that decision is, until reversed by a higher Court, the law of the case.

The second class of prayers submitted and the questions discussed by counsel have been that, although there was no actual receipt by the carrier of the cotton mentioned in the bills of lading, still the defendant is liable on the same, either—

First. Because there was evidence of a custom existing among the agents of transportation companies in Savan-nah, under which said agents were in the habit of issuing bills of laden upon the delivery to them of railroad or cotton press receipts, or—

Second. Because the agent of the defendant had for some three months been in the habit of issuing bills of lading to Green (the party to whom the bills of lading here sued on were delivered) on the mere promise of said Green that he would, within a limited time, deliver to said agent the receipts referred to, which habit or usage on the part of said agent must, from the circumstances surrounding the transaction, have been known to the defendant, or—

Third. Because the facts in the case show that there had been a ratification on the part of the defendant of the alleged irregular acts of its agents.

I will consider the alleged custom and the particular usage on the part of the agent together. In the first place, I think that the defendant corporation had a right to appoint its agent as other corporations of like character; that is, that upon the appointment of its agent, it had a right to infer that that agent would be bound as to his powers by the positive rules of law, one of which prescribes that such agent shall have no power to bind his principal by a bill of lading unless the goods have been actually delivered. Now, contrary to this positive rule of law, it is said that there was a custom among such agents at Savannah to issue bills of lading utterly regardless of this rule of law. In other words, it is contended that a usage or custom (contrary to a positive rule of law which the principal had a right to rely on) among a limited class in a particular locality, is to govern in this case, and is to fix the responsibility and liability of the defendant, although the knowledge of such usage or custom was not in manner brought home to said defendant. It is scarcely necessary to discuss this question, because, even should it be conceded that such custom existed, and should I be inclined to give to it the effect contended for by the plaintiffs, still it would be inapplicable to the uncontradicted facts developed in this case. The bills of lading here in dispute were issued under no such custom. No receipts of the character described were in fact delivered to the

agent, but on the contrary, a mere promise of future delivery of such receipts. It is utterly impossible to say that there is any evidence here of any custom at Savannah by which the shipping agents issued bills of lading on the mere promises of prospective shippers to furnish receipts of the class that were generally acted on when actually furnished. What are the really undisputed facts before me? The evidence is all one way that this agent issued these bills upon a simple promise of an individual (Green) to deliver to him certain railroad receipts the next morning, which Green said he then had in his safe, and which had been endorsed to the defendant: The contention of the plaintiffs is here brought to this point; that because the defendant's agent had been in the habit, from March to June, 1891, of issuing bills of lading to Green on his promise to deliver railroad or press receipts within a time agreed on between the two, that now the defendants are liable although the receipts were not delivered as promised, and notwithstanding there is no evidence that this course of dealing on the part of the agent was in any way brought to the notice of the defendant. From a careful view of the whole evidence, I am convinced that there has been nothing developed in this case from which a justifiable or reasonable inference could be drawn that because this course of dealing on the part of the agent continued for about three months, and because large quantities of cotton were shipped under these circumstances, when there was nothing in such fact of shipment to give the defendant any notice of misconduct on the part of said agent, we should infer knowledge and approval by said defendant. The case relied on chiefly by the plaintiff on this point is the case of Montgomery &c., Ry. Co. vs. Kolb, 73 Ala. 396.

I do not think the facts in that case and in the case before me at all analogous. The broad and sweeping language used in relation to the duties of corporations is very much in vogue in these days. The duties of a corporation and the duties of an individual under the circumstances of this case are practically the same. The corporation acting lawfully is just as much entitled to the protection of the law as the individual, no more, no less.

In the Alabama case the orders to the agent were voluminous and very exact in relation to the receipt of cotton; among other things it was directed that cotton when left on the premises of the company should be in a condition for shipment, that no receipt should be given until the cotton was placed upon the company's platform and shipping directions given. The shipper had notice of these rules and yet had been delivering cotton and obtaining receipts without exact compliance with these rules. The dispute was not on a written or former bill of lading, but was simply whether or not nine bales of cotton, not receipted for, had come into the hands of the railroad company, and the decision was practically and substantially made on the ground that although the cotton was received in a manner not permitted by the rules of the company, still if it had really come into its hands it should not be allowed to hold it as against the rightful owner. This was practically the question, and the evidence admitted of the usage on the part of the agent threw light upon the question whether the company has actually received the cotton.

The difference between the circumstances of that and the pending case are wide. In that case it was a question of allowing a corporation to hold on to property of another delivered to it without making compensation; in this case it is a question of making the defendant account for goods which it never actually received.

Even if the case were presented here as having arisen under the alleged custom at Savannah, I should hesitate long, taking into consideration the strong language used in the several cases cited to me, before I could feel justified that the defendant would be held liable. Courts entitled to the highest respect have held that the very initial point of a bill of lading is a delivery of goods to the carrier, and that the bill of lading, being a contract of carriage, there was no contract unless there was delivery of goods to the carrier; in other words, there was no bill of lading as known to the law, without delivery, and it is, therefore, a question whether there could be a suit on the instrument where the delivery is not shown. Certainly the

logical result of the language used—some of the cases going so far as to say that the instrument is void without delivery—is that if a party is injured by wrong action in such a case he would be compelled to sue for the wrong and could not sue on the contract. If it is void in consequence of the initial step not having been taken, how can the void bill be sued upon? This question, however, I do not think it necessary to decide in this case.

Now, as to the subsequent ratification by the defendant. The plaintiffs insist that this ratification is shown by the delivery of the deed by the agent to the President of the defendant and his acceptance of the same. And here I may note that it is further contended that even if this incident does not show ratification, it does show prior knowledge and acquiescence on the part of the defendant. I am satisfied that it shows nothing of the kind; its effect on my mind is directly contrary to either of the above conclusions, I do not see how it is possible for an impartial and reasonable man to say, under the evidence relating to that incident, that it could have taken place under any other manner and with any other purpose than as detailed by Mr. Guerard himself. Is it conceivable that this agent, knowing that he had performed his duties properly and in accordance with the orders or approval of his principal, would have stripped himself of his property to satisfy one that he had never wronged or injured?

His story on the fact of it, carries conviction to my mind that at the time of making known his irregular conduct, and up to that time, there was no knowledge on the part of his principal as to his course of action; and he made the transfer to indemnify that principal for this irregular course of conduct, should the principal be held liable.

Now, I think, when we take into consideration the facts as developed in this case, we have a right to believe, and we must believe, that the principal being apprehensive that under the Maryland law he would be held liable for the acts of his agent in regard to these bills of lading, the contract was made with the agent just as he says it was. At any rate there is positive evidence that that was the

manner in which the contract was made; and, finding no evidence that is legally sufficient to go to the jury, as to any usage on the part of this agent which was known, or will be presumed to be known to the principal, and finding no evidence in the taking of this property, of knowledge or intention to ratify the acts of the agent, I must reject all the prayers that bear on that point.

In regard to the ninth prayer I think, although there is some little informality in it, I ought not to refuse it. It substantially states the law as I believe it to be, but applies only to the pleas in regard to fraudulent conduct.

While the case has been going on a difficulty has arisen in my mind in regard to granting the prayer of the defendant in this case, caused by the suggestion, rather than the argument, of the learned counsel who opened for the plaintiff. His suggestion was, as I understand it, that the statements in the bill of lading being *prima facie* true, there could be no prayer granted taking the matter away from the jury, as the burden of proof was on the defendant, and in no case of that character should the case be taken from the jury.

Now, without again going into the question, I should say I should hesitate a long time before deciding that it is not the law, as the defendants have contended in this case that it is, that in addition to proving the signature it was necessary to prove the other incidents of the bill of lading which would be necessary to give it vitality and validity—but taking the view of the plaintiffs that it made a *prima facie case*, that the burden was upon the defendant, in the same way that the burden of proof was on the plaintiff in the first instance, to prove his case, I have looked at authorities to see whether there is any positive rule of law which would prevent the case from being taken from the jury on that ground. The first case that I found on that point was in 65th Md., p. 22. There the plaintiff sued on a promissory note. He produced the note and proved its execution. The defendant then showed either fraud, or no consideration, or something that would have invalidated the note unless in the hands of a *bona fide* purchaser for val-

uable consideration, thus throwing the burden upon the plaintiff. The Court was asked to instruct the jury that there was no evidence—that the party took with notice, or subject to these defenses, substantially. The lower Court refused to grant the instruction and it went to the Court of Appeals, and the Court of Appeals reversed the judgment, because that instruction had not been granted. That is a case showing positively that there is no rule which will forbid a Court granting an instruction taking a case away from a jury—in favor of a party against whom there was a burden of proof in the first instance.

In a case cited by the plaintiffs for another purpose, I find that the Supreme Court has fully justified that course of action on the part of the lower Court. In case of the North Pennsylvania Railroad Company against the Commercial National Bank, 123 U. S., the Court held that there was no doubt of the power on the part of the Circuit Court to direct a verdict for the plaintiff—although the burden of proof was on the plaintiff, in the first place, upon the evidence presented in a cause, where it is clear that he is entitled to recover, and no matter affecting his claim is left in doubt to be determined by the jury. Such a direction is eminently proper, when it would be the duty of the Court to set aside a different verdict, if one were rendered. It would be an idle proceeding to submit the evidence to the jury when they could justly find only in one way.

As I have come to the conclusion, in my own mind, gentlemen, that there is no evidence on which the jury could hold the defendant in this case, I should not hesitate, upon the cases submitted to me to-day, if the jury were to find for the plaintiffs, to grant a new trial. That being the case, I feel I am bound to grant the defendant's prayer. I would suggest, however, that the defendant add to that instruction as coming from the Court, that there is no evidence that this agent was authorized to issue, nor any ratification of the acts of the agent in issuing bills of lading without the delivery of the goods, because that phase of the question has been submitted.