# Shelby Iron Co., *v.* Dupree.

### *Breach of Contract.*

(Decided May 17, 1906. 41 So. Rep. 182.)

1. *Evidence; Parol Evidence to Vary Written Contract; Contract of Sale.*—When the contract requires that the seller deliver coal by wagons to the buyer's furnaces, and that the buyer pay for it a certain sum per bushel of 2748 cubic inches, to be measured in cabs of the buyer at its furnaces, such contract is com-

plete and cannot be varied or explained by proof of custom or usage.

2. *Sales; Construction; Quantity; Ascertainment.*—Under a contract by which the seller of coal agreed to deliver it by wagons to the buyer's furnaces, and the buyer agreed to pay a certain sum per bushel of 2748 cubic inches to be measured in the cab at the buyer's furnaces, and under this contract the buyer received the coal at its shed 75 or 100 yards from its furnaces, measuring it and receipting for it at such sheds; the place of delivery or receipt was the place of measurement to ascertain the quantity of coal, and not the furnace to which the coal was transported by means of the cabs into which it was loaded at the shed.

APPEAL from Shelby Circuit Court.

Heard before HON. JOHN PELHAM.

Action by B. W. Dupree against the Shelby Iron Company for charcoal alleged to have been delivered and not paid for. The contract and the facts on which the opinion is rested sufficiently appear therein. There was judgment for plaintiff and defendant appeals.

KNOX, DIXON & BURR, for appellant.—"Where valid usages prevail in respect to the subject-matter of a contract and the parties to the contract are chargeable. with knowledge thereof, such usages are presumed to be tactitly incorporated into the contract so far as they are not expressly or impliedly negatived by the express terms; and parol evidence of such usages is permissible to interpret. the contract."—29th Am. & Eng. Enc. of Law, 2d Ed., p. 421; *Montgomery & Eufaula Ry. Co. v. Kolb & Hardaway*, 73 Ala. 396; *McClure & Co. v. Cox, Brainard & Co.*, 32 Ala. 617; *Ala. & Tenn. R. R. Co. v. Kidd*, 29 Ala. 221; *Hosea v. McCrary*, 12 Ala. 349.

"Evidence of usage on the question as to quantity, terms and price is always admissible."—Enc. of Law & Procedure, (12th Vol.) p. 1085.

"Knowledge of custom and usage can always, even in cases where the usage is so limited and local in its application that the presumptive evidence founded on its generality will not bring it to the parties' knowledge, be established by direct evidence of the parties' actual

knowledge, as by notice or otherwise."—29th Am. &
Eng. Enc. of Law, (2d Ed.) p. 393.

"A usage, being a fact to be proven by the testimony
of the persons acquainted with such fact; and the state-
ment of a witness, sufficiently qualified by experience,
as to what a usage is, is not an expression of opinion
but a statement of fact."—29th Am. & Eng. Enc. of Law,
(2d Ed.) page 410; 32 Enc. of Evidence, pages 953-954.

"The previous course of dealing between the parties
is very material and may often show knowledge of the
usage, ever in the face of a denial of such knowledge by
the party sought to be charged."—29th Am. & Eng. Enc.
of Law, (2d Ed.) p. 409.

"Proof of the generality of the usage is only requisite
where no actual knowledge is brought home to the party
against whom the usage is asserted. The usage of a
single individual is admissible as against one who is
shown to have known of it and contracted with refer-
ence thereto."—29th Am. & Eng. Enc. of Law, (2d Ed.)
pp. 392 and 393.

SAMUEL WILL JOHN, for appellee.—"It is the prov-
ince of the court, to expound to the jury, all written in-
struments, which may be offered in evidence."—*Martin
v. Chapman*, 6 Porter, 344, 351; *Kidd & Co. v. Cromwell,
Haight & Co.*, 17 Ala. 652; *Moore v. Lesseur*, 18 Ala.
609; *Long v. Rodgers*, 19 Ala. 331; *Wyatt v. Steele*, 26
Ala. 647; *Shook v. Blount*, 67 Ala. 303-4.

Had the court *left*, the construction of this written
contract *to the jury* he would have committed an error.
—*Long v. Rogers*, 17 Ala. 548; *Moore v. Lessuer*, 18
Ala. 609; *Shook v. Blount*, 67 Ala. 303-4.

SIMPSON, J.—This is an action by appellee (plain-
tiff) against appellant (defendant) for $750, claimed
to be due for charcoal delivered under contract orig-
inally made between appellant and one Christian,
whose interest in the contract passed to the plaintiff.
The contract is set out in the record, and the plaintiff
claims that he has delivered more coal than he has re-
ceived payment for, while the defendant contends that·

he has delivered only the amount for which payment has been made. The controversy arises from the contention of plaintiff, on one side, that the written contract is definite in all of its terms and is the sole exposition of the agreement between the parties, and the contention of the defendant, on the other, that certain questions should have been permitted to be asked of the witness to prove : (1) That it has been the established and well-known custom of the defendant to have the cabs so filled (with the charcoal) at the wagons or loading place that they would be full when they reached the furnace or elevator; and (2) that such was the well-known custom and usage of all well-regulated furnaces in this district. In other words, the defendant's contention is that, although the cabs may have been heaped up, above a level measure, at the place where the coal was received, yet if, after transportation from the place of delivery to the furnace stack, the coal did not rest above the level of the sides of the cab, then the defendant was liable only for the amount of coal which it is agreed that said cabs held by measurement.

The material parts of the contract are that the plaintiff "is to furnish and deliver the coal by wagons to their (defendant's) furnaces at Shelby, Ala.," and that the defendant "agrees to pay to said party of the first part, for each bushel of 2,748 cubic inches of charcoal, delivered under this contract, to be measured in the cabs of said party of the second part (defendant) at their furnaces, the sum of 6 cents, free, at their furnaces, at Shelby, Ala." The evidence is uncontroverted that said cabs were "60 inches long, 30 inches wide, and 30 inches deep, all inside measurement. So it was a matter of easy calculation as to how many bushels of the required dimensions would be held in the cabs, when loaded, so as to be level with the sides of the cab. The bill of exceptions also states that "the evidence showed without conflict" that this "five-peck" bushel of 2,748 cubic inches had been adopted in place of the regular bushel "to compensate for the space between the pieces of coal as loaded into cabs." The evidence is without conflict also, that the coal which was delivered was

hauled in wagons to a shed on the furnace company's grounds, about 75 or 100 feet from the furnace stack, being the place designated by said company; that at said place the coal was emptied from the wagons, and the company's employes filled the cabs by forking the coal into them; that near by said place, so as to be convenient thereto, the defendant company had put up and maintained a box, in which were a number of paddles or boards with numbers on them to correspond to the number of the wagons delivering the coal; that when the forkers (servants of defendant) forked the coal which had been dumped from the wagon into the cab, they would make a score or mark on the board or paddle which had the same number as the wagon delivering the coal, and each day the agent of defendant, whose duty it was to inspect and receive the coal, would take up these boards or paddles, and from them ascertain how many bushels had been delivered.

Proof of custom or usage is not permissible to vary the terms of a contract, but where the language used is ambiguous, or its meaning is uncertain, usage is admissible to show what is meant thereby. Evidence is admitted to annex incidents to a contract, where it is apparent that the parties have omitted to state important parts, but not to add incidents inconsistent with the express terms of the contract.—29 Am. & Eng. Enc. Law, 427, 436; see, also, 12 Cyc. p. 1093, 1095, 1096, and notes. Where freight was received, "to be delivered to a railroad agent, at a certain place, proof was permitted of a custom to deposit in a warehouse there, because the agent did receive it, and the contract was silent as to what he should do with it after receiving.—*Ala. & Tenn. River R. R. v. Kidd,* 29 Ala. 222. In the case of *Montgomery & E. Ry. v. Kolb,* 73 Ala. 396, 49 Am. Rep. 54, it was not a question of contradicting a written contract, but the paper that was contradicted by custom was merely a circular which the railroad had issued instructing its agents not to receive goods, without receipting for them, etc., and the proof showed that they had constantly disregarded those rules, and the custom as to how they did receive

cotton was properly admitted. In that case Judge Stone says: "When persons enter into express stipulations, expressing the terms in which they enter into contracts, it is a reasonable rule, subject to only a few exceptions, that neither custom or usage will be allowed to dispense with such express stipulations."—Page 40. So, where the contract was that the hirer of a slave was to "lose the negro's lost time," it was inadmissible to prove a custom that that meant time lost by sickness, etc., and not time lost by death.—*Barlow v. Lambert,* 28 Ala. 704, 65 Am. Dec. 374.

Where the parties differed as to what the price agreed on was, custom was not admissible to show what the price was, the court saying: "Evidence of usage and custom is not permitted to prevail over and nullify the express provisions and stipulations of the contract." Quoting also: "It may be that the very object of the contract was to avoid the effect of usage, and no evidence of usage can be admitted to contradict the (express) terms of the contract, or control its legal interpretation and effect."—*Wilkinson v. Williamson,* 76 Ala. 163; *Wilson v. Smith,* 111 Ala. 170, 175, 20 South. 134. Where a tenant signed a written agreement to pay 20 bales of cotton as rent, the landlord was not allowed to show "that it was a rule or custom he had made on his plantation that he should have all the cotton seed, even though this fact was known to the defendant, as this was a mere personal mode of dealing on the part of the plaintiff, * * * and it would seem to contradict the express terms of the rent note."—*Powell v. Thompson,* 80 Ala. 51, 55. The supreme court of the United States, speaking through Justice Miller, has said: "The tendency to establish local and limited usages and customs in the contracts of parties, who had no reference to them when the transaction took place, had gone quite as far as sound policy can justify. It places in the hands of corporations, such as banks, insurance companies, and others, by compelling individuals to comply with the rules established for the interests alone of the former, a power of establishing those rules as usage or custom with the force of law. When

this is confined to establishing an implied contract, and the knowledge of the usage is brought home to the other party, the evil is not so great. But when it is sought to extend the doctrine beyond this, and incorporate the custom into an express contract whose terms are reduced to writing, and are expressed in language neither technical nor ambiguous, and therefore needing no such aid in its construction, it amounts to establishing the principle that a custom may add to or vary or contradict the well-expressed intention of the parties made in writing. No such extension of the doctrine is consistent, either with authority, or with the principles which govern the law of contracts."—*Partridge v. Insurance Co.,* 15 Wall. (U. S.) 573, 579, 21 L. Ed. 229.

We hold that in this case the parties have expressed their contract in writing. There is no term omitted, no ambiguous term, no technical words needing explanation, and it is not open to explanation or addition by proof of custom. The contract expresses that the defendant is to deliver the coal "by wagons to their furnaces, and to pay so much for each 2,748 cubic inches of charcoal delivered * * * to be measured in the cab * * * at their furnaces." "At their furnaces" evidently meant on their furnace grounds at such a place as they may designate. When they received it in their shed, that was at their furnace, and certainly that was the construction given to it by the parties themselves, for it was to be hauled to the place of delivery by the wagons. It was thrown into the cabs there, by their own hands, noted on the boards, and receipts given, so that the delivery was complete, and that was the place of measurement. To hold otherwise would be to say that, although the contract says you are to deliver 2,748 cubic inches in the cab, yet by custom I have a right to take 2,748 inches in the cab and then pile several bushels on top, to insure me against shrinkage, notwithstanding we have already added a peck to each bushel and put it in the contract for that purpose.

The construction of the contract was for the court, and we hold that the court construed it correctly. The

[Allen v. Alston, as Ex.]

evidence does not raise any question as to the quality
of the coal.

The judgment of the court is affirmed.

TYSON, ANDERSON, and DENSON, JJ., concur.