(76 South. 282)

BOSHELL v. RECEIVERS OF ST. LOUIS & S. F. R. CO. (6 Div. 542.)

(Supreme Court of Alabama. June 28, 1917.)

1. CARRIERS &—84—NONDELIVERY OF SALT— CUSTOM OR USAGE.

Although plaintiff had for 26 years received his freight over a certain platform, which had been the usual place of delivery for such period among all shippers or consignees of carload shipments, a change of place of delivery by the defendant carrier from such platform was not in violation of any contractual right of plaintiff, where the salt was delivered at an accessible platform, as required by Code 1907, § 5605.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 277, 290–298.]

2. WORDS AND PHRASES — "TRACK DELIVERY SHIPMENTS"—"DROP SHIPMENTS."

Carload shipments are known as "track delivery shipments," as distinguished from ordinary freight unloaded from the cars, known as a "drop shipment" delivery.

---

&—For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. CARRIERS ☞89—SALE OF GOODS BY CARRIER—NOTICE TO CONSIGNEE—WAIVER.**

In an action for conversion of freight by defendant railroad, which freight the consignee refused to unload, evidence *held* sufficient for submission to the jury of question whether consignee consented to sale thereof without compliance with Code 1907, § 6139, as to time and notice of sale.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 324–330.]

Anderson, C. J., and McClellan and Gardner, JJ., dissenting in part.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action by B. R. Boshell against the receivers of the St. Louis & San Francisco Railroad Company. Judgment for defendants, and plaintiff appeals. Transferred from the Court of Appeals under section 6, p. 449, Acts 1911. Affirmed.

Appellant had been engaged in the mercantile business at Townley, Walker county, Ala., for a period of 26 years, and had received carload shipments of freight from the defendant company during said period. Near to his store was a side track, and between the side track and his store was what is called the "old cotton platform," and he had been in the habit of receiving his freight over this platform. He ordered a carload of salt, which reached Townley on the defendant railroad December 1, 1913, and at 11 o'clock on the morning of that day was placed by the defendant railroad on what is called the "wagon track" of the defendant, which is about 1,000 feet from the depot office; the store of the appellant being located about 90 yards from the depot, and 115 feet from the main track.

The evidence for the appellees tends to show that prompt notice was given to the appellant of the arrival of the salt, and that for some time previous to the arrival of the salt the use of the side track which passed by the cotton platform for the purpose of delivery of carload shipments had been discontinued, for the reason that this track was continuously being used at all hours of the day and night for switching and passing of trains, and that for several months the "wagon track," where the carload of salt was placed, had been used for delivery of carload shipments. Upon being notified of the arrival of the salt, and that it was placed on the "wagon track," appellant declined to receive the same, and demanded that appellees have the car placed on the side track near the cotton platform, where he had been accustomed to receive his carload shipments. The agent, having instructions from his superior to discontinue the use of that track for that purpose, declined to have the car so moved, and appellant stated to the agent that he would not unload it unless he (the agent) placed it on the cotton platform, and further stated to the agent that "unless he put it there he could take it and do what he pleased

with it; the railroad company could take the salt and do what it pleased with it."

The agent subsequently sold the salt for a sufficient sum to realize the freight and demurrage charges, the proper amount of which is not in question, and the evidence for appellees tends to show that he used due diligence in his efforts to get the best price possible. The sale was a private one, and no notice was published as to the same, as required by the statute. At the same time of the shipment of the carload of salt, appellant also received a carload of meal, which was placed on the same track as that of the salt, and which he subsequently hauled to his store. Appellant in this suit relies for recovery upon two counts—count 1 seeks for recovery of damages as for a nondelivery of the carload of salt, and count 2 is based upon the sale of the salt by appellees, and is one seeking recovery as for the conversion thereof.

The evidence for appellees tended to show that the carload of salt was delivered on the track which had been used for that purpose for the past several months, and that Townley was a local station, with not more than one team track, and it was a suitable place for delivery, and accessible to appellant. Evidence for appellant tended to show that it was very inconvenient for him, and that it had been customary for his carload shipments, as well as carload shipments for all others, to be delivered at the cotton platform, and that this custom had continued without interruption for a period of 26 years, and he had no notice of any change of custom until notified of the arrival of the salt.

The court submitted to the jury the issue of fact as to whether or not the place where the car was located was reasonably accessible to appellant, and on the second count for conversion submitted to the jury the question as to whether or not appellant, by his language and conduct to defendant in regard to the carload of salt, had waived a strict compliance with the provisions of the statute in regard to notice as to the sale. It is without dispute that prior to the sale the appellees had demanded of the appellant the charges due on the carload of salt. The jury found the issue in favor of defendant in the court below, and from the judgment entered accordingly, the plaintiff prosecutes this appeal.

Gray & Wiggins, of Jasper, for appellant. J. H. Bankhead, Jr., of Jasper, for appellees.

PER CURIAM. The opinion which follows was prepared by the member of the court to whom the cause was assigned, but, upon consultation by the whole court, the majority (consisting of Justices MAYFIELD, SAYRE, SOMERVILLE, and THOMAS) were not in accord with that part of the opinion reversing the cause for instructions of the court on the question of delivery of the carload of salt under count 1 of the complaint.

---

[1] The majority ·entertain the view that the trial court properly submitted to the jury the only question of fact arising under said count 1; that is, whether or not the carload of salt was placed for delivery at the station in a place reasonably accessible to the plaintiff, which issue the jury found in favor of the defendant, and that it does not appear that the change of place of delivery from what is called the "cotton platform" was in violation of any contractual right of plaintiff. They agree with the treatment of the case in the minority opinion with this exception, but conclude that the judgment should be affirmed.

The few remaining questions not discussed have been duly considered, and nothing is found in them calling for a reversal of the cause, or any detail treatment thereof. In accordance with the view of the majority, the judgment appealed from will be affirmed.

Affirmed.

MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur.

GARDNER, J. (dissenting). [2] The nature of the suit and principal questions presented by this appeal sufficiently appear in the foregoing statement of the case. Carload shipments are known as "track delivery" shipments, as distinguished from ordinary freight unloaded from the cars, known, it, seems, as a "drop shipment" delivery.

Under the provisions of section 5605, Code 1907, carload shipments for track delivery at stations within the class in which was the station here in question are required to be placed at an accessible point for unloading. Greek-Amer. Produce Co. v. Ill. Cent. R. R. Co., 4 Ala. App. 377, 58 South. 994. The evidence for appellee tended to show that this carload of salt was placed on the spur track promptly upon its arrival, which was used for the purpose of such delivery of carload shipments, and had been so used for some time previous thereto, and that it was reasonably accessible to the plaintiff. The court charged the jury that if they believed from the testimony that the carload of salt was placed on the track operated by defendant for the purpose of delivering freight, and that it was reasonably accessible to plaintiff, then that would constitute a delivery within the meaning of the bill of lading, and as being in substantial compliance with said section 5605 of the Code, and exception thereto was reserved by the plaintiff. The court also gave at the request of defendant charges Nos. 5 and 8, which are as follows:

(5) "I charge you that if you are reasonably satisfied from the evidence that defendant delivered the carload of salt at Townley on a spur track designated by it as a place for unloading carload shipments of freight at that point, and which said spur track was at an accessible place for unloading cars of freight therefrom, then I charge you that constituted a delivery of the goods to the plaintiff, and he would not be entitled to recover on count 2 of the complaint."

(8) "If you are reasonably satisfied from the evidence that the defendants delivered the freight involved in this suit at Townley, Ala., at the point of destination, and placed the loaded cars in which same arrived at Townley at an accessible place for unloading within 24 hours after the arrival of the freight at Townley, then I charge you that that constituted a delivery of the freight to plaintiff under the bill of lading, and plaintiff would not be entitled to recover on those counts of the complaint charging failure to deliver the goods to him."

Other similar charges were also given, which need not be here set out. As appears from the foregoing statement of the case the evidence for the plaintiff tended to show that carload shipments of freight had, for a period of 26 years, been delivered by the railroad company on the sidetrack adjacent to the cotton platform, and that such custom had continued without interruption for such period of time, and prevailed among all shippers or consignees of carload shipments, and that he had had no notice whatever of any change of such custom until notified by the agent after the carload of salt had arrived and had been placed on the spur track some distance from his place of business. It has been held by this court that such a custom or usage as is shown by the tendency of the evidence for the plaintiff may become a part of the contract of carriage and thereby binding upon the carrier. In Montgomery & Eufaula Railroad Co. v. Kolb & Hardaway, 73 Ala. 396, 49 Am. Rep. 54, speaking to this question of custom or usage, the court used the following language:

"Whatever regulation, custom, or usage such station agent adopts, or permits to be adopted, the public must either conform to, or will feel itself justified in conforming to. The rules observed by shippers in their general transactions, if continuous or frequent, although not universal, grow into a usage, which would authorize others to treat it as the proper rule, and as an element of the contract of affreightment. This constitutes the very spirit, the intent, of a usage of trade. It supplies, by implication, an unexpressed fact, or link in the chain of facts, which go to make up and prove the contract. And we think it no answer to this that no testimony was offered of this violation of instructions on the part of the agent, tending to trace notice of it to the superintendent. It was the duty of the corporation to keep itself informed of the manner in which its station agents conducted their agency, their habit or usage in the matter of receiving and delivering freight; and we think it would be highly detrimental to the public service if we were to permit a railroad corporation to escape responsibility for the consequences of a usage, which its own trusted agents had permitted to grow up and be acted upon."

And in Melbourne & Troy v. L. & N. R. R. Co., 88 Ala. 443, 6 South. 762, speaking to the same question, the court said:

"Such usage would have been a part of the contract of carriage, and imposed on the defendant the duty of delivery to another carrier, at the request of the consignee, and from a failure to so deliver would have sprung the liability imputed to the defendant by the complaint here."

See, also, Ala. & Tenn. Rivers R. R. Co. v. Kidd, 29 Ala. 221, and Shelby I. Co. v. Dupree, 147 Ala. 602, 41 South. 182.

The oral charge of the court, as well as those given at the request of the defendant, clearly indicated that this feature of the plaintiff's case was ignored in the trial of the cause, and must work a reversal thereof.

The testimony for plaintiff, as previously stated, tended to show that he had no notice whatever of any change in this custom so long established, until the arrival of the carload of salt, and that the carload of salt was placed on a track very inconvenient to his place of business, which would require additional time and expense in hauling to his store. On the other hand, however, there was evidence for the defendant tending to show that delivery of carload shipments, on the track adjoining the cotton platform, had been discontinued several months previous to this shipment, and that plaintiff had notice, prior to the time of shipment, that such carload shipments were no longer delivered there, but were delivered on what is known as the spur track. This particular question, therefore, should have been submitted to the jury for determination.

[3] The court further charged the jury concerning count 2, which sought recovery as for conversion, that if defendant company took the salt, and sold it without complying with the statute (section 6139, Code 1907), it would be guilty of a conversion, and plaintiff would be entitled to recover, unless the jury were reasonably satisfied from the evidence that plaintiff himself expressly waived his right in the matter and granted permission for the sale of the salt. We are of the opinion that the provisions of section 6139 (Code) are primarily for the benefit of the consignee or the owner of the goods, and that the requirements as to the time and notice of the sale, as therein provided, may be waived by the consignee, and, if so waived, the defendant company, acting upon such waiver, sells the freight without a compliance with the provisions of the statute, the consignee cannot be heard to complain. The plaintiff expressly declined to unload the freight, and stated to the agent of defendant that the railroad company "could take the salt and do as it pleased with it." We think the evidence was sufficient for a submission to the jury as to whether or not the plaintiff consented to the sale without a requirement of the preliminaries prescribed by the statute. We recognize fully that as a general rule, under statutes of this character, these provisions must be complied with; but we are cited to no authority holding that they may not be waived by the consignee. We find no error, therefore, in that portion of the oral charge of the court as to said count. We have here considered the salient features of the case. For the error indicat-

ed we entertain the view the judgment should be reversed. The majority are not in accord with the portion of this opinion giving effect to the long-continued custom as to place of delivery which arises under count 1 of the complaint, seeking recovery as for nondelivery of the carload of salt, and it results, therefore, that upon this feature the foregoing becomes the dissenting opinion of the minority.

ANDERSON, C. J., and McCLELLAN, J., concur in the foregoing opinion.